LEVERETTE *et al.*, commissioners, *v.* LEONARD *et al.*, registrars.

No. 13607.   June 14, 1941.

363

W. W. *Walker,* for plaintiffs in error.   D. D. *Veal,* contra.

ATKINSON, Presiding Justice.   Two of the three members of the board of registrars for the County of Putnam, in their individual and official capacities, instituted mandamus proceedings against the county board of commissioners of roads and revenues, to compel approval, and an order for payment out of funds in the county treasury, of an account for prescribed fees and other expenses incurred in preparing an official list of registered voters that was filed with the clerk of the superior court on August 20, 1940.   The judge overruled a general demurrer to the petition.   On consent of the parties the case was submitted on the pleadings without in-

troduction of other evidence. A mandamus absolute was granted. The respondents excepted, error being assigned on both rulings of the judge. The Code, § 34-301, provides for biennial appointment of registrars, "for a term of two years and until their successors are appointed and qualified," by the judge of the superior court of each county. "The registrars shall, in each year in which a general election is to be held, meet on the 20th of April, . . and begin the work of perfecting a true and correct list of the qualified voters of their county." § 34-401. "The registrars shall proceed with their work and complete the same not later than June 1. . . Should the said registrars for any cause fail or refuse to make up and file said list of registered voters within the time required by law, then the said registrars may, at any time before the 20th day of August during the year in which general elections are held, make and file such list of registered voters." § 34-403. Supplemental registration lists are provided for (§ 34-406), and additional lists (§ 34-407). "The board of registrars shall have the right and shall be charged with the duty of examining each two years the qualification of each elector whose name is entered on the voters' books, and shall not be limited or stopped by any action taken at any prior time." § 34-408. "For each day the county registrars may be actually engaged in the discharge of their duties, they shall each receive the sum of $2. All of said sums shall be paid out of the county treasury as other county bills are paid. . . The cost of the voters' books and of printing the lists provided for shall be paid out of the county treasury as other county bills are paid." § 34-1001.

The object of the foregoing provisions of law, considered with others in the same title, is to insure and sustain the integrity of public elections, whether they relate to the holding of office or to ascertainment of result on questions depending on submission to popular vote. This is so whether the elections be general, local, or for some special purpose. There is no such thing as exhaustion of duties of the registrars, based on mistake or improper performance. They should not certify a false list of voters. The law imposes prescribed duties on the registrars throughout their terms, and contemplates the performance of such duties in respect to all elections that may take place in the county during their terms. It could not have been the legislative intent to provide for the filing

of a list of voters which in fact is untrue. Such would be contrary to the declared purpose of purging the names of all persons registered who are not qualified to vote. The law as set forth in the Code, supra, does not declare expressly or by necessary implication that the registrars may not during the same year revise an untrue list of voters that may have been inadvertently certified and filed, or that they may not in lieu thereof make a new list excluding names of persons not qualified to vote that were contained in the first or untrue list. Neither does the law contemplate that such revision of the untrue list would be without the power of the registrars unless done "before" the 20th day of August. On the contrary, in view of the legislation, the provisions of the cited Code sections are to be construed as imposing a duty on the registrars at any time during their administration, upon discovery of a mistake of themselves or of their predecessors in certifying an untrue list of registered voters, to proceed to correct it. The registrars' terms of office being two years and until their successors are appointed and qualified, they have the power and duty to function according to law during their terms, and would not lose such authority merely because an untrue and imperfect list of voters may have been made and filed at any time.

Without resort to the order of the judge, and whether or not he had authority to pass the same, the statute imposed upon the registrars the duty of making a true and complete list of the registered qualified voters for the year in question; and under the allegations of the petition it appeared that when the registrars entered upon the service for which the present claim was made, no previous registration list had been made for the year in substantial compliance with the law. Accordingly, the list for the making of which two of the registrars are now seeking compensation amounted in effect to the first and only lawful list of the registered voters made during the year. The petition further shows that the present petitioners as registrars were not responsible for the defects in the so called first list, they having come into office later; and whether or not payment had been made to the registrars who made the former list, the two registrars who are now seeking compensation for their services in making an alleged true and correct list appeared to be entitled to the relief sought.

It is not decided that registrars would be authorized during a

single year to make *two true and correct lists* of the registered voters and to charge the county for making both lists. According to the petition, the plaintiffs are seeking compensation for making what appears to be the first and only true and correct list. The fact that the petition alleged the second list was filed *on August 20th,* whereas the Code, § 34-403, provides the registrars may file such list, "at any time *before the 20th day of August,*" would not, in view of other allegations, authorize denial of the compensation provided in § 34-1001, it appearing from the petition that the services of the registrars were otherwise properly performed. In *Howell* v. *Bankston,* 181 *Ga.* 59 (181 S. E. 761), it was held: "Under constitutional and statutory provisions, county commissioners are authorized to pay, from general county funds, the costs of county registrars in preparing lists of voters." The judge did not err in overruling the defendants' demurrer and in granting a mandamus absolute. *Judgment affirmed. All the Justices concur.*